IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LUBA OPLCHENSKI and AIDA NOREY, )
individually and on behalf of a class of )
persons similarly situated, )
                     )        Case No. 05 CV 6105
                     )
       Plaintiffs, )        Judge John W. Darrah
                     )
       v. )
                     )
PARFUMS GIVENCHY, INC., *et al.*, )
                     )
       Defendants. )
                     )

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Luba Oplchenski and Aida Norey, have filed a Fifth Amended Complaint ("Complaint") in this multi-defendant putative class-action lawsuit, challenging Defendants' classification of "rotators" – and others who worked in the fragrance and cosmetics industry at department stores – as independent contractors rather than employees, thereby excluding them from participation in various employee benefits and benefit plans. Pending before the Court is Plaintiffs' Amended Motion for Class Certification. (Docket No. 247.) Also pending before the Court is Plaintiffs' Motion to Strike Expert Opinions From Defendants' Response. (Docket No. 259.) For the reasons stated below, both motions are denied.

## LEGAL STANDARD

Allegations made in support of class certification are considered true. *Hardin v. Harshbarger*, 814 F. Supp. 703, 706 (N.D. Ill. 1993). As a general matter, the court does not examine the merits of the case. *Retired Chicago Police Ass'n v. City of Chicago*,

1

7 F.3d 584, 598 (7th Cir. 1993) *("Chicago Police")*. However, a court "may look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied." *Dhamer v. Bristol-Myers Squibb Co.*, 183 F.R.D. 520, 529-30 (N.D. Ill. 1998) (citing *Castano v. America Tobacco Co.*, 84 F.3d 734, 744 (5th Cir. 1996)). The party seeking certification bears the burden of establishing that certification is proper. *See Trull v. Plaza Assoc.*, 1998 WL 578173 (N.D. Ill. Sept. 3, 1998).

To receive class certification, the named representatives must satisfy, for each class they seek to represent, all of the requirements under Fed. R. Civ. P. 23. First, the proposed class action must satisfy the following four elements of Rule 23(a): (1) numerosity: the class must be "so numerous that joinder of all members is impracticable"; (2) commonality: "there are questions of law or fact common to the class"; (3) typicality: "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) adequacy of representation: "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In addition, in order to be certified, an action must be maintainable under at least one of the three provisions of Rule 23(b). Under Rule 23(b), a class action may be maintained if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> > (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class;
> >
> > (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual

2

adjudications or would substantially impair or impede their
ability to protect their interests;

(2) the party opposing the class has acted or refused to act on grounds that
apply generally to the class, so that final injunctive relief or corresponding
declaratory relief is appropriate respecting the class as a whole; or

(3) the court finds that questions of law or fact common to class members
predominate over any questions affecting only individual members, and
that a class action is superior to other available methods for fairly and
efficiently adjudicating the controversy.

Fed. R. Civ. P. 23.

The Court has broad discretion in determining whether class certification is

proper. *Keele v. Wexler*, 149 F.3d 589, 592 (7th Cir. 1998); *Chicago Police,* 7 F.3d at

596.

## FACTS[1]

Plaintiff Oplchenski performed services for Defendant Parfums Givenchy, Inc.

("PGI") as a rotator (also sometimes called fragrance specialist or fragrance model) in

Chicago from February 1999 to August 2002. (Oplchenski Aff., Def. Ex. 2, ¶ 1.) She

was paid $17 per hour in 1999, $18 per hour in 2000, $19 per hour in 2001, and $25 per

hour in 2002. (Oplchenski Aff., ¶ 6.) Oplchenski's rate of pay was set by PGI "account

executives"; Oplchenski did not set her rate of pay. Oplchenski was not offered any

employment benefits, such as insurance and paid vacation. She recorded the time she

worked on time sheets and submitted them to PGI for payment. (Oplchenski Dep., Def.

Ex. A, 123-24.) PGI paid Oplchenski what she expected to be paid. PGI did not

withhold any money for taxes or insurance, and Oplchenski was aware of this.

---

[1]     The facts set forth below were derived from the filings of record.

3

(Oplchenski Dep., 126-27). She understood that she did not have health insurance through PGI. (Oplchenski Dep., 131.) At the time, Oplchenski had other health insurance. (Oplchenski Dep., 131.) Oplchenski received IRS Form 1099 at the end of each year in which she performed services for PGI. (Oplchenski Dep., 129.) She did not receive or expect to receive a W-2. (Oplchenski Dep., 129.) The timesheets she turned in to PGI for payment stated: "This payment is for services performed as an independent contractor. As such I understand that I have total responsibility for the payment of income taxes on these earnings and I am not eligible for any company or unemployment benefits." (Def. Ex. 11.)

Oplchenski also worked for a few hours for Defendant Guerlain, an affiliate of PGI, in 2004. (Oplchenski Dep., 133.) When she worked for Guerlain, she was paid $18 per hour. (Oplchenski Dep., 148.) She did not turn in time sheets as she did for PGI; rather, she reported her time through a phone-in system. (Oplchenski Dep., 133.) Oplchenski did not expect to receive any employee benefits from Guerlain. (Oplchenski Dep., 146.)

Plaintiff Norey performed services as a fragrance specialist for PGI and its American Designer Fragrances Division from early 2001 until early 2003. (Norey Aff., Pltf. Ex. D, ¶ 1.) When Norey was retained by PGI, she met with an account executive, who told her she would be paid $20 per hour. (Norey Deposition, Def. Ex. 3, 59.) When Norey was hired as a fragrance specialist, there was no discussion as to whether she would be considered an employee or independent contractor, and there was no discussion about whether she would receive company benefits. (Norey Dep., 64, 67.) Norey kept

4

track of the hours she worked in a notebook and then submitted her time on signed invoices containing the same language set forth above that appeared on Oplchenski's invoices. (Norey Aff., ¶ 7.) No taxes were withheld from payments made to Norey for her services, and she received an IRS Form 1099 at the end of each year she worked. (Norey Dep., 105.) During the time she worked, Norey received health insurance coverage through her husband's employment. (Norey Dep., 108.)

Plaintiffs contend that Oplchenski was discharged by her account executive on August 22, 2002, and Norey was constructively discharged in early 2003 when PGI stopped scheduling her for work. Oplchenski's lawyer sent letters to PGI to determine what benefit plans existed that were subject to the Employee Retirement Income Security Act ("ERISA") and asserted claims on Oplchenski's behalf with the fiduciaries of the various plans. According to Plaintiffs, the "plan fiduciaries rejected Oplchenski's claims and then engaged in a series of efforts to conceal information about the company's well-documented history of misclassifying sales personnel as independent contractors." (Pltfs. Mem. at 14.) Plaintiffs contend that they – and tens of thousands of others – were common-law employees mischaracterized by Defendants as independent contractors and thus excluded from participation in various employee benefits and benefit plans.

Plaintiffs' Complaint alleges nine causes of action: a claim for a violation of Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), based on Defendants' alleged withholding of benefits to Plaintiffs under the terms of benefit plans subject to ERISA (first claim for relief); a claim for unpaid compensation under the Illinois Wage and Payment Collection Act ("IWPCA") (second claim for relief); a claim for overtime

5

compensation under the Illinois Minimum Wage Law ("IMWL") (third claim for relief); a claim for breach of contract for improperly requiring Plaintiffs to work as common-law employees but denying them pay and benefits paid to other common-law employees (fourth claim for relief); claims for breach of fiduciary duty under ERISA (fifth and seventh claims for relief); a claim for benefits under exhaustion provisions of ERISA (sixth claim for relief); a claim for violation of Section 502(c) of ERISA based on the failure to provide Oplchenski with a copy of the administrative record (eighth claim for relief); and a claim for breach of implied contract (ninth claim for relief).[2]

Plaintiffs now ask the Court to allow "this action to proceed as a class action on behalf of all common law employees (using the United States Supreme Court definition under *Darden v. U.S.*[3]) of one or more of the companies who are or were affiliates of [Defendant Parfums Givenchy, Inc. ("PGI")] and its predecessors, successors, affiliates, parent companies and any other company who was transferred any rights, duties or obligations of [PGI] . . . who were misclassified or mislabeled as independent contractors and excluded from participation in various known and unknown pay, plans, programs, reimbursements or any other arrangements . . . to which they are or were entitled on account of their employment by such entities." (Pltfs. Mot. at 1-2; Pltf. Mem.

---

[2]    Plaintiffs' tenth claim for relief for unjust enrichment was previously dismissed. (Docket No. 160.) Plaintiffs' fourth claim for relief for breach of contract and ninth claim for relief for breach of implied contract were also dismissed in part.

[3]    Although Plaintiffs refer in their motion to *"Darden v. U.S.,"* the Court assumes Plaintiffs rely on *Nationwide Mutual Ins. Co. v. Darden*, 504 U.S. 318 (1992) (*Darden*), the case discussed in their brief.

at 4.) Specifically, Plaintiffs seek an order certifying the following classes and subclass:

**Class A**

All employees of the PG Inc. Affiliates who were classified or labeled as independent contractors and excluded from participation in various known and unknown pay, plans, programs, reimbursements or any other arrangements to which they were entitled on account of their employment by such entities from 1975 to the present ("Pay and Benefit Plans"), including but not limited to the database of persons identified by defendants that was filed with the court as Dkt. 237-2, 237-3 and 237-4.

Subclass:

All employees of PG Inc. Affiliates who were classified or labeled as independent contractors who worked part time (i.e. worked 50 percent of the time) at any time prior to December 31, 2000 and who did not receive 25 options under the OPAL[4] – Shares For All program.

**Class B**

All employees of PG Inc. Affiliates who were excluded because of their classification as independent contractors from the Christian Dior Perfumes, Inc. Pension Plan (effective January 1, 1977), Retirement Plan for Employees of Guerlain, Inc. (effective September 1, 1945) [renamed the LVMH Affiliates Pension Plan effective January 1, 2001], the LVMH Affiliates Retirement Plan, Wines & Spirits (effective January 1, 1989) and the LVMH Affiliates Retirement Plan and all participants in the LVMH Affiliates Retirement Plan who had their future benefit accruals reduced by a December 2000 amendment.

**Class C**

All employees of PG Inc. Affiliates who were excluded from the LVMH & Affiliates Medical and Dental Benefit Plan because of their classification as independent contractors, and all employees of PG Inc. Affiliates who were excluded from the Plan because an unwritten 30 hour workweek requirement and/or subject to any other unwritten requirement including but not limited to eligibility to receive retiree medical benefits.

(Pltf. Proposed Order.)

---

[4]     "OPAL" refers to PGI's Options For All Worldwide stock option plan. (Pltf. Mem. at 10.)

7

Plaintiffs ask the Court to appoint Oplchenski "as Class Representative of the Pay and Benefit Plans of Class A that are subject to ERISA"; Norey and Oplchenski as the "Class Representatives of the Pay and Benefit Plans of Class A that are not subject to ERISA"; and Oplchenski as the "Class Representative of Class B and Class C." (Pltf. Proposed Order.)

## ANALYSIS

### Numerosity

Plaintiffs contend the numerosity requirement is met because Defendants have produced a database identifying 39,737 unique social security numbers of potential class members.[5] (Pltf. Exs. A1, A2) (under seal). Plaintiffs thus argue that "regardless of the ultimate scope of the class definition, the class easily satisfies the numerosity requirement." (Pltf. Br. at 20.) Defendants dispute this position, maintaining that the fact that social security numbers appear in a common database is insufficient to "group people in a class and satisfy Rule 23's numerosity requirement." (Def. Opp. at 21.) Defendants contend Plaintiffs have failed to demonstrate numerosity because Plaintiffs have failed to estimate how many of the individuals appearing in the database actually meet the requirements for, and would have participated in, the various plans referenced for each of the subclasses Plaintiffs seek to have certified. (Def. Opp. at 19-20.)

Although a plaintiff cannot rely on conclusory allegations or speculation as to class size, numerosity problems can be resolved subsequent to class certification.

---

[5]     In their reply, Plaintiffs contend Defendants have now produced a DVD, indicating that this number has increased to 55,525. (Pltf. Rep. at 2.)

8

*Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir.1989). Generally, where class members number at least 40, joinder is considered impracticable and numerosity is satisfied. *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000); *Swanson v. American Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir.1969). Furthermore, a finding of numerosity can be based on common sense assumptions. *In re VMS Securities Litigation*, 136 F.R.D. 466, 473 (N.D.Ill.1991). Plaintiffs have pointed to a database identifying nearly forty thousand "rotators" and others classified as independent contractors across the nation. With a nationwide field of potential class members so large, common sense assumptions suggest that the requisite number for class certification for each of the proposed classes and the subclass will be satisfied; the numerosity requirement has been met.

### Commonality

Commonality exists where a class possesses common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "Absolute commonality" is not required; commonality is satisfied if the plaintiff can demonstrate that a "common nucleus of operative fact" exists among the proposed class members. *Parker v. Risk Mgmt. Alt., Inc.*, 206 F.R.D. 211, 212 (N.D.Ill. 2002). As courts in this district have recognized, the commonality standard is "quite low." *Hernandez v. Midland Credit Mgmt., Inc.*, 236 F.R.D. 406, 411 (N.D. Ill. 2006). Generally, a plaintiff need only show that there is at least one question of law or fact common to the class. *VMS Securities Litigation*, 136 F.R.D. at 466; *Portis v. City of Chicago*, No. 02 C 3139, *2 (N.D. Ill. Sept. 8, 2003).

9

Plaintiffs contend the central issue in the case is whether Plaintiffs and the class members were common-law employees of Defendants under the standard set forth by the Supreme Court in *Darden*, 503 U.S. 318. There, the Supreme Court held that the term "employee," as used in the ERISA statute, incorporates traditional agency law criteria. The Court held the following common-law standard applies for determining who qualifies as an "employee" within the meaning of the ERISA statute:

> In determining whether a hired party is an employee under the general common law of agency, we consider the hiring party's right to control the manner and means by which the product is accomplished. Among the other factors relevant to this inquiry are the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Darden*, 503 U.S. at 323-24.

According to Plaintiffs, the issue of Defendants' control over rotators is common to all of the proposed classes. Plaintiffs contend Defendants systematically exerted a high degree of control over rotators under the *Darden* criteria, and the determination of Defendants' control over rotators can be determined on a class-wide basis, even if there are factual disputes concerning the level of control exercised. (Pltf. Mem. at 10-12; 18.) Plaintiffs identify the following as issues – all involving, or derivative of, a determination of the *Darden* test – as being common to the class: "(1) Whether independent contractors were misclassified because they were, in reality, employees; (2) whether misclassifying employees as independent contractors and excluding them from benefit

10

plans subject to ERISA constituted a breach of fiduciary duty under ERISA; (3) whether defendants' misclassification of rotators was fraudulent; (4) whether failure to provide a compliant § 204(h) notice [under ERISA] rendered purported plan amendments invalid; (5) whether defendants breached their fiduciary duty to the Plaintiffs and the Class by failing to inform them (i) that their worker classification had been challenged and the subject of an audit inquiry over a considerable time span, (ii) that their employer had entered into an agreement to change their classification that was later reneged." (Pltf. Mem. at 20-21.)

Relying on the Seventh Circuit's post-*Darden* decision *Trombetta v. Cragin Federal Bank for Savings Employee Stock Ownership Plan*, 102 F.2d 1435, 1440 (7th Cir. 1997) (*Trombetta*), Defendants contend the issue of Defendants' control of rotators under the *Darden* test is not a common issue but is "wholly immaterial" because the benefit plans under which Plaintiffs claim wrongful exclusion here did not define an "employee" in the same way as the ERISA statute or the common law. (Def. Opp. at 18.) In *Trombetta*, the Seventh Circuit held that an employer is not obligated to define an employee for purposes of its benefit plans in the same way an employee is defined in the ERISA statute but, rather, "is free to define the terms in its plan however it wishes." *Trombetta*, 102 F.2d at 1440. In *Trombetta*, the court upheld an employer's decision to exclude loan originators from participating in an employee stock ownership program under the arbitrary and capricious standard. In reaching that holding, the court found that the trustees of the plan had discretionary authority to construe the terms of the plan and found their decision that loan originators were independent contractors rather than

11

employees for purposes of the plan was not arbitrary and capricious.

Plaintiffs, in their reply, do not contest Defendants' assertion that the employee plans here in question adopted different definitions of an employee than the ERISA statute. Therefore, based on *Trombetta*, the *Darden* criteria are not necessarily dispositive of Plaintiffs' claims.

However, the *Darden* factors present at least one common issue of law or fact for purposes of the low threshold commonality requirement of Fed. R. Civ. P. 23(a)(2) and is not "wholly immaterial" in the case as Defendants assert. The criteria for participation in the various plans and benefits have not yet been established, but the record shows that Defendants went through a *Darden*-type analysis when they considered and rejected Oplchenski's claim for benefits. (*See* Def. Ex. 36.) This suggests that the *Darden* factors are at least relevant to how Defendants define an employee for purposes of eligibility of Oplchenski for a benefit plan. Furthermore, the *Trombetta* court stated that the *Darden* factors are relevant in determining who has standing to sue under ERISA. In addition, Plaintiffs have alleged a number of claims under Illinois law, and it has not been shown that the common-law standard for establishing an employee-employer relationship does not apply to these claims. For all these reasons, *Darden* presents at least one common issue of law or fact for purposes of the low threshold commonality requirement of Fed. R. Civ. P. 23(a)(2).

*Typicality*

"The question of typicality in Rule 23(a)(3) is closely related to the preceding question of commonality." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

This requirement "primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large." *Chicago Police*, 7 F.3d at 596-97. "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Plaintiffs assert the typicality requirement is met because their claims "arise from defendants' uniform classification of rotators as independent contractors and turn on the same legal analysis under the Supreme Court's analysis in *Darden*." (Pltf. Mem. at 22.) Defendants dispute Plaintiffs' analysis because "rotators had very different experiences with the Defendant Companies depending on when they provided services, for which company they provided services, and to which Account Executive they were assigned. Their potential claims also differ significantly depending on which version of a plan was in effect during their period of service." (Def. Opp. at 19.) Defendants point out how Plaintiffs' work situations differed from other potential class members with respect to the various plans. (Def. Opp. at 20-21.) In support of this position, they submit the expert report of Dr. Matthew Mercurio, who provides a statistical analysis of differences in the work experiences of Plaintiffs from the proposed class of rotators. (Def. Ex. 18.)[6]

---

[6]     Plaintiffs have moved to strike the Mercurio report, as well as the report of another expert, Kenneth Maginot, submitted by Defendants in opposition to class certification on the basis that these experts were not disclosed to Plaintiffs prior to Defendants' filing their brief in opposition to class certification and because their opinions go to the merits of the case. (Docket 259.) The Motion to Strike is denied. The opinions of the experts pertain to issues to be addressed regarding class certification, not the merits

Despite factual differences in the situations of the potential class members (which may ultimately result in different findings as to the various class members' eligibility for benefits under the plans), typicality is nevertheless satisfied because the potential claims of the class members all involve the same alleged course of conduct by Defendants – an alleged systematic determination by Defendants that rotators and others working in the fragrance area were independent contractors not employees. Further, as discussed above, the issue of Defendants' control of rotators under *Darden* is at least relevant.

Defendants' arguments as to typicality – as well as their arguments as to commonality – are essentially that Plaintiffs have not shown that all of the proposed class members are in fact eligible for benefits under the terms of the various different plans asserted in the proposed classes and subclass. Defendants' arguments pertain more to the requirements for certification under Fed. R. Civ. P. 23(b) (discussed below) and do not demonstrate a lack of threshold commonality or typicality for purposes of class certification. The commonality inquiry under Rule 23(a) is only whether common issues of law or fact exist, and for the reasons discussed above, they do. Further, because the common issues identified include the same alleged course of conduct by Defendants in classifying workers, sufficient typicality also exists for purposes of Rule 23(a).

### Adequacy of Representation

The final requirement of Rule 23(a) is whether "the representative parties will

---

of the underlying claims, and Defendants did not violate any rule or court order in failing to produce them. Therefore, the opinions are properly considered.

14

fairly and adequately protect the interests of the class." Courts in this district have used the following three factors to show adequacy: (1) the representative does not have conflicting or antagonistic interests compared with the class as a whole; (2) the representative is sufficiently interested in the case outcome to ensure vigorous advocacy; and (3) class counsel is experienced, competent and qualified. *Sledge v. Sands*, 182 F.R.D. 255, 259 (N.D. Ill. 1998).

Defendants rely on *Robinson v. Sheriff of Cook County*, 167 F.3d 1155 (7th Cir. 1999) for the proposition that a weakness in the class representative's claim casts doubt on a finding of adequacy. (Def. Opp. at 10.) Defendants argue that the named Plaintiffs' claims are not adequate class representatives because there are a number of deficiencies in Oplchenski's claims, including that her ERISA claims are time-barred; she does not have standing to assert ERISA and OPAL claims; her alleged injuries were not caused by Defendants' alleged conduct; the requested relief will not redress her injuries; and as a former rotator, she lacks standing to seek prospective injunctive relief on the ERISA and OPAL claims. (Def. Opp. at 10-17.) Plaintiffs dispute that Oplchenski's claims are time-barred and otherwise contesting Defendants' contentions that Olpchenski lacks standing. (Pltf. Rep.) Plaintiffs contend Defendants' arguments are akin to a Rule 12(b) motion to dismiss and constitute an improper effort by Defendants "to get an early merits determination on issues the Court has already ruled too early to determine." (Pltf. Rep. at 13.)

Although the Court is allowed to "look beyond the pleadings to determine whether the requirements of Rule 23 have been satisfied," *Dhamer*, 183 F.R.D. at 529-30,

the "weakness" arguments raised by Defendants are more appropriately addressed on a motion to dismiss or for judgment on the merits. It is undisputed that Plaintiffs are former rotators classified by Defendants as independent contractors rather than employees for purposes of various benefits; therefore, their interests do not differ from those of the class as a whole. Further, nothing in the record suggests that the named plaintiffs will not vigorously pursue the litigation on behalf of the class or that class counsel is not experienced, competent and qualified. This is sufficient to demonstrate adequacy of representation.

### *Rule 23(b)*

Having determined that Plaintiffs meet Rule 23(a)'s threshold prerequisites, it must be determined what form of class action, if any, is appropriate under Rule 23(b). *See Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) (courts should "endeavor to select the most appropriate subsection" to ensure that all appropriate procedures are followed). Plaintiffs seek class certification for thier claims that involve money damages under Rule 23(b)(3). (Pltf. Mem. at 23.) They contend that their claims that do not involve money damages could be certified under either Rule 23(b)(1) or (2).

Defendants argue that certification is only appropriate, if at all, under Rule 23(b)(3) because, "given that Plaintiffs' relationships with Defendants terminated years ago, it is clear that the primary objective of this case is the recovery of monetary benefits – e.g., compensation for unpaid benefits, vacation, sick time, paid holidays, and overtime." (Def. Opp. at 22.) Defendants argue that although Plaintiffs "gloss over the remedies they seek, this is a case "[p]lain and simple" in which "Plaintiffs are seeking a

16

large sum of money for themselves and the members of the putative class." (Def. Opp. at 22.)

Plaintiffs do not take issue with Defendants' characterization of their case as one seeking predominately monetary damages. Accordingly, Rule 23(b)(3) is operative. *See Lemon v. Int'l Union of Operating Eng'r, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000); *Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894, 898 (7th Cir. 1999) (acknowledging that when substantial monetary damages are sought, the most appropriate analysis for class certification involves predominating common questions of law and fact under Rule 23(b)(3), which requires the procedural guarantees of notice to class members and an opportunity to opt out).

In order to maintain a class action under Fed. R. Civ. P. 23(b)(3), Plaintiffs must demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

Defendants point to a myriad of issues that must be determined to resolve all of Plaintiffs' claims as to all class members.

First, there are multiple plans at issue, and multiple amendments to each plan, which will apply to potential class members differently, depending on when and for which company the potential class member performed services. For example, Defendants contend, amendments were made at various times to various plans that

17

excluded participation for certain groups, such as persons who did not receive W-2s and rotators.[7]

Second, the plans at issue have different eligibility requirements, such as the requirement of a thirty-hour work week, necessitating "a highly individualistic analysis . . . to determine if a class member could claim eligibility for benefits" under each plan.[8]

---

[7]    Defendants submit exhibits to show that: (1) the Retirement Plan was amended in December 2000 to exclude persons who did not receive W-2s and were treated as independent contractors; a December 2002 amendment excluded rotators; and a July 2003 amendment and restatement excluded persons classified as independent contractors; and (2) the Medical Plan was amended seven times between May 2003 and January 2007, including an amendment in May 2003 that excluded rotators; an amendment in January 2005 that excluded selling specialists; and an amendment in January 2006 that excluded make-up artists, ringers, spritzers, promotional models and individuals classified as independent contractors. In addition, Defendants submit exhibits to show that various election forms for different plans contained differing eligibility requirements; for example, the CDP LLC and PG LLC Agreement and Election forms, dated April 11, 2003, state that rotators are not eligible to participate in the Medical Plan, and the OPAL Plan likewise applied only to certain employees on the payroll on December 31, 2000, who remained employed until May 14, 2005.

[8]    Defendants here point out, for example, that even though Plaintiffs claim class members who would have waived coverage under the Medical Plan should receive $100 per month during the period the benefit was offered in a Highlights Booklet, the Highlights Booklet states that a person is not eligible unless he was regularly scheduled a 30-hour work week. Further, employees were not eligible to participate in the Retirement Plan until the May 1 following the completion of six months of service and would not have any vested benefits until completion of 1,000 hours of service per year. All of these eligibility issues require individual analysis.

Third, the Medical Plan required an election to participate. Thus, determining which putative class members failed to receive benefits under this plan because of Defendants' classification of them as independent contractors rather than due to other, personal decisions "would require separate consideration of each member's circumstances." Defendants submit the report of Ken Maginot, an expert in the healthcare benefit industry, who states that a substantial percentage of rotators would not have elected to participate even if the plan had been offered to them for various personal reasons. (Def. Ex. 41.) Thus, Defendants contend, determining who would have participated "will require a person-by-person analysis that will depend on individual circumstances (e.g., whether he/she had coverage under a spouse's or parent's plan, whether the premium cost would have been prohibitively high relative to income, etc.)."

Fourth, even if Plaintiffs are correct that the common-law test of control under *Darden* is a significant issue, "many individual issues must be considered" in a *Darden* determination "because rotators had varied experiences." Defendants further assert the *Darden* test would not apply to Plaintiffs' state-law claims, which require "analysis of the laws of dozens of states where rotators worked."

Fifth, as to Plaintiffs' common-law breach-of-contract claims, Defendants contend "individual inquiry will be required of the terms of the agreements that each rotator entered into when he/she was retained by an Account Executive."

Sixth, with respect to Plaintiffs' claims of common-law breach of contract and implied contract, "the Court will have to determine the substantive law and applicable limitations period for every state and Canada."

19

Finally, determining the potential recovery of class members requires a person-by-person consideration of a number of issues, including "(1) whether [each] person would have elected to participate and, if so, in which plan; (2) actual health care expenses incurred; (3) and analysis of the applicable schedule of benefits to determine coverage level; (4) coordination against other coverage provided; and (5) an offset for premiums that the rotator would have been obligated to pay to participate in the plan." (Def. Opp. at 26.)

Defendants' arguments are persuasive. Plaintiffs do not demonstrate in their reply that the identified individual inquiries will not be required. Instead, Plaintiffs take the position that "Defendants have already conceded that rotators are and were employees" and rely heavily on the fact that the Internal Revenue Service and various states have found rotators to be employees for purposes of federal taxes and state unemployment benefits. (Pltf. Rep. at 13.) However, Defendants have not conceded that rotators are employees. (Def. Sur-Rep. at 4.) Further, as discussed above, *Trombetta* makes clear that an employer is not obligated to define the term "employee" for purposes of its benefit plans in the same way as the ERISA statute but may define the term "however it wishes." *Trombetta*, 102 F.3d at 1440. Therefore, the relevant inquiry for purposes of Plaintiffs' ERISA claims is not whether the IRS or other state agencies have classified rotators as employees for other purposes but, rather, how Defendants' various plans define eligible employees. *See Trombetta.*

A court in this district recently decertified a class where the defendant's control over the plaintiffs (as in *Darden*) established the relevant legal standard. *See Walker v.*

*Bankers Life & Casualty Co.*, No. 06 C 6906, 2008 WL 2883614 (N.D. Ill. July 28, 2008)

(Conlon, J.). In *Walker*, agents who sold insurance for the defendant alleged they were

misclassified as independent contractors, depriving them of rights and benefits due to

employees under California law. Judge Conlon ruled that determining whether the

employer controlled each agent's work as required to establish an employer-employee

relationship depended on an individualized inquiry and was not suitable for class

treatment under Federal Rule of Civil Procedure 23(b)(3):

> [A] liability determination will require an individualized evaluation of
> each agent's relationship with Bankers Life. The evidence proffered with
> respect to plaintiffs' summary judgment motion indicates that whether
> Bankers Life had the right to control its agents cannot be resolved solely
> by referring to the agent contract and training manuals and publications.
> It would require scrutiny of each agents' experience with regard to
> training, monitoring, practices, and requirements on the job.

*Walker*, 2008 WL 2883614, at *11.

The reasoning in *Walker* is applicable and persuasive here. As in *Walker*,

Defendants argue, and have pointed to evidence to show, that the experiences of rotators

in this regard varied greatly. Therefore, as in *Walker*, a determination of whether

Defendants controlled each Plaintiff and member of the proposed class(es) under the

common-law *Darden* test would, here, likely require a fact-dependent examination of

each individual rotator's work experience with Defendants and could not be determined

for the class solely on the basis of Defendants' employee handbook, as Plaintiffs suggest.

In sum, although Plaintiffs allege Defendants uniformly characterized rotators as

independent contractors to exclude them from receiving various benefits, Plaintiffs have

not shown that liability turns predominately on the common issue of whether Defendants

21

controlled the manner and means of the rotators' work. Rather, Defendants have shown that liability would turn on individual issues, including the terms of the individual plans and whether each proposed class member meets the eligibility criteria for each of the plans and would have opted for benefits. Determining which of the over-forty-thousand potential class members in many states meet the eligibility criteria for the various employee benefits and benefit plans asserted would present an overwhelming number of individual issues. A class action here is not the superior method by which to adjudicate such a dispute and ultimately could require a multitude of mini-trials pertaining to the individual circumstances of rotators. Accordingly, the provisions of Rule 23(b)(3) have not been met.

## CONCLUSION

In that Plaintiffs have not shown that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members," certification is not warranted under Fed. R. Civ. P. 23(b)(3). Plaintiffs' Amended Motion for Class Certification, therefore, is denied. For the reasons stated, Plaintiffs' Motion to Strike Expert Opinions From Defendants' Response is also denied.

Date: December 3, 2008

John W. Darrah
United States District Court Judge