

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUBA OPLCHENSKI and AIDA NOREY, ) | |
| ) | |
| Plaintiffs, ) | Case No. 05 CV 6105 |
| ) | |
| v. ) | Judge John W. Darrah |
| ) | |
| PARFUMS GIVENCHY, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Luba Oplchenski (Oplchenski) and Aida Norey (Norey) (collectively,

Plaintiffs), filed their Fifth Amended Complaint ("FAC") as a putative class-action

lawsuit under the Employee Retirement Income Security Act of 1974 ("ERISA").

Plaintiffs challenge Defendants' classification of them as independent contractors rather

than employees, thereby excluding them from participation in various employee benefits

and benefit plans. The Court denied Plaintiffs' motion for class certification on

December 3, 2008; therefore, only the individual claims of Oplchenski and Norey

remain. Defendants now move for summary judgment on Plaintiffs' individual claims.

(Docket No. 315.)[1] For the reasons stated below, the motion is granted in part and denied

in part.

---

[1]Defendants' initial brief was filed prior to the Court's denial of class certification;
therefore, as Defendants acknowledge in their reply, Defendants' arguments in their initial brief
as to the class claims are moot.

## LEGAL STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in the non-moving party's favor. *Gillis v. Litscher*, 468 F.3d 488, 492 (7th Cir. 2006). The moving party has the initial burden to show that the evidence is insufficient to establish a material element of the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, the non-moving party cannot rest on conclusory pleadings but must "set forth specific facts in affidavits or otherwise to show that there is a genuine issue of material fact that must be decided at trial." *Colan v. Cutler-Hammer, Inc.*, 812 F.2d 357, 361 (7th Cir. 1987). If the evidence supporting the non-moving party's claim is insufficient for a reasonable jury to return a verdict in its favor, the court will grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

# FACTS

The parties' filings provided under Local Rule 56.1,[2] for purposes of summary judgment, agree on virtually no factual statements. (*See* Pltfs. Response to Def. Statement of Material Facts ("DSOF"); Def. Response to Pltfs. Statement of Additional Facts.) The Court will not endeavor (were it even possible) to parse through the parties' Rule 56.1 statements, responses thereto and exhibits to arrive at a comprehensive recitation of the undisputed facts here. Rather, the parties bear the responsibility to cite (and support) the material facts on which they bear the burden of production on summary judgment. The following basic facts, as previously set forth by the Court in its Memorandum Opinion and Order addressing Plaintiffs' motion for class certification, are restated here for background purposes only. Any specific facts necessary for the resolution of the pending motion (and any disagreement between the parties as to those facts) will be addressed where pertinent in the analysis below.

Oplchenski and Norey were both hired by subsidiaries of a French conglomerate to sell fragrances in department stores in Chicago. Defendants are all companies and individuals affiliated with the French conglomerate and subsidiary companies.

---

[2]Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A litigant's failure to respond to a Rule 56.1 statement results in the court's admitting the uncontroverted statement as true. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

Oplchenski performed services for Defendant Parfums Givenchy, Inc. ("PGI") as a rotator (also sometimes called fragrance specialist or fragrance model) in Chicago from February 1999 to August 2002. She was paid $17 per hour in 1999, $18 per hour in 2000, $19 per hour in 2001, and $25 per hour in 2002. Oplchenski's rate of pay was set by PGI "account executives"; Oplchenski did not set her rate of pay. Oplchenski was not offered any employment benefits, such as insurance and paid vacation. She recorded the time she worked on time sheets and submitted them to PGI for payment. PGI paid Oplchenski according to the time sheets. PGI did not withhold any money for taxes or insurance, and Oplchenski was aware of this. She understood that she did not have health insurance through PGI. At the time, Oplchenski had other health insurance. Oplchenski received IRS Form 1099 at the end of each year in which she performed services for PGI. She did not receive a W-2. Further, the time sheets she turned in to PGI for payment contained preprinted language which stated: "This payment is for services performed as an independent contractor. As such I understand that I have total responsibility for the payment of income taxes on these earnings and I am not eligible for any company or unemployment benefits."

Oplchenski also worked for a few hours for Defendant Guerlain, an affiliate of PGI, in 2004. When she worked for Guerlain, she was paid $18 per hour. She did not turn in time sheets as she did for PGI; rather, she reported her time through a phone-in system. Oplchenski also did not receive any employee benefits from Guerlain.

4

Norey performed services as a fragrance specialist for PGI and its American Designer Fragrances Division from early 2001 until early 2003. When Norey was retained by PGI, she met with an account executive, who told her she would be paid $20 per hour. There was no discussion as to whether she would be considered an employee or independent contractor, and there was no discussion about whether she would receive company benefits. Norey kept track of the hours she worked in a notebook and then submitted her time on signed invoices containing the same language set forth above that appeared on Oplchenski's invoices. No taxes were withheld from payments made to Norey for her services, and she received an IRS Form 1099 at the end of each year she worked. During the time she worked, Norey received health insurance coverage through her husband's employment.

Plaintiffs contend that Oplchenski was discharged by her account executive on August 22, 2002, and that Norey was constructively discharged in early 2003 when PGI stopped scheduling her for work.

In June and July 2003, Oplchenski's lawyer sent letters to PGI, asserting that she was entitled to certain employee benefits. On September 10, 2003, Oplchenski received letters, denying her claims for benefits under Defendants' Retirement Plan (Def. Appendix, Tab GG) and Medical Plan (Def. Appendix, Tab KK). Oplchenski appealed these denials. However, the denials were affirmed by letter on January 9, 2004. It is unclear whether and how Norey asserted entitlement to benefits and whether and what response she received from Defendants regarding her eligibility.

5

However, it is undisputed that Defendants have taken the position that Plaintiffs are not entitled to various benefits they seek because they were independent contractors rather than employees.

The FAC alleges nine causes of action: a claim for benefits under Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B) (Count I); a claim for unpaid compensation under the Illinois Wage and Payment Collection Act ("IWPCA") (Count II); a claim for overtime compensation under the Illinois Minimum Wage Law ("IMWL") (Count III); a claim for common-law breach of contract for improperly requiring Plaintiffs to work as common-law employees but denying them pay and benefits paid to other common-law employees (Count IV); claims for breach of fiduciary duty under ERISA (Counts V and VII); a claim for an award of benefits based on Defendants' failure to comply with various procedural requirements of ERISA, 29 U.S.C. § 1133 (Count VI); a claim for violation of Section 502(c) of ERISA based on the failure to provide Oplchenski with a copy of the administrative record (Count VIII); and a common-law claim for breach of implied contract (Count IX).[3]

## ANALYSIS

### Count I - ERISA Benefits

Section 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a suit to recover benefits due under the terms of a plan, to enforce his rights under a plan, or to clarify his right to future benefits under the terms of a plan. 29 U.S.C. § 1132(a)(1)(B). Plaintiffs seek benefits under the LVMH Affiliates'

---

[3]A tenth cause of action (for unjust enrichment) was previously dismissed. (Docket No. 160.)

6

Retirement Plan ("Retirement Plan") and the LVMH Medical Plan ("Medical Plan") (collectively, "Plans"). Plaintiffs contend, despite Defendants' characterization of them as independent contractors, they are common-law employees entitled to benefits under these Plans.

Defendants first contend they are entitled to summary judgment on this claim on the basis that their decision to classify Plaintiffs as independent contractors rather than employees (and thus exclude them from participation in the Plans) must be upheld under the arbitrary and capricious standard of review because the plan administrators rationally determined, in their September 2003 denial letters to Oplchenski, that the term "employee," as used in the Plans, means "a person who is issued a W-2 Form and is treated as an employee."

"Benefit determinations are reviewed *de novo* unless the trustees of the plan have discretionary authority to determine eligibility. If the trustees of the plan have such discretion, then review of the trustees' decisions is conducted using an arbitrary and capricious standard." *Trombetta v. Cragin Federal Bank for Saving Employee Stock Ownership Plan*, 102 F.3d 1435 (7th Cir. 1997) (*Trombetta*).

Although Plaintiffs do not specifically dispute that plan administrators were afforded discretion to interpret the Retirement Plan, Plaintiffs dispute that the Medical Plan afforded discretionary authority. Defendants do not identify what specific provision(s) in either of the subject plans purportedly confer discretionary authority on

plan administrators.[4] Therefore, Defendants have not demonstrated, for purposes of summary judgment, that the arbitrary and capricious standard of review applies to the plan administrators' benefit decisions under the Plans.

Plaintiffs oppose summary judgment primarily on the grounds that they were common-law employees based on the Ninth Circuit's decision in *Vizcaino v. Microsoft Corp.*, 97 F.3d 1187 (9th Cir. 1997) (*Vizcaino*). *Vizcaino* held that workers whom Microsoft had labeled independent contractors (and excluded from participating in ERISA and non-ERISA benefit plans) were entitled to benefits under the plans because they performed work "under conditions which made them employees," despite how Microsoft labeled them. *Vizcaino*, 120 F.3d at 1012. The workers satisfied the requirements of being "common law employees."

While *Vizcaino* is instructive as to whether Plaintiffs are common-law employees, it is not controlling as to whether or not Plaintiffs are entitled to benefits under the ERISA plans in effect here.

_____

[4]As to the Retirement Plan, Defendants refer to paragraph 9 of their statement of facts, which does not identify a discretion-granting provision in the Retirement Plan. The paragraph states:

Defendant Retirement Plan is an employee pension benefit plan under ERISA. Prior to December 31, 2000, the Retirement Plan was known as the Retirement Plan for Employees of Guerlain, Inc. On December 31, 2000, CDP became a participating employer in the Retirement Plan. On January 1, 2001, PGI became a participating employer in the Retirement Plan. On April 28, 2003, PG LLC became a participating employer in the Retirement Plan.

(DSOF, ¶ 9) (record citations omitted.)

Likewise, Defendants do not point to a specific discretion-granting provision in the Medical Plan.

8

Relying on *Trombetta*, Defendants contend they are entitled to summary judgment on Plaintiffs' ERISA benefit claims even under a *de novo* standard. *Trombetta* instructs that the critical issue for determining whether or not a worker is entitled to benefits under ERISA plans is how the plans define eligible employees. *See Trombetta*, 102 F.3d at 1440 (an employer "is free to define the terms in its plan however it wishes.") The test for common-law employees is not controlling.[5] The ERISA plan in *Vizcaino* defined a covered "employee" as "any common law employee . . . who is on the United States payroll of the employer." *Vizcaino*, 120 F.3d at 1010. Defendants contend Plaintiffs are not entitled to benefits under the Retirement and Medical Plans because Plaintiffs do not meet specific eligibility criteria of their Plans, which are different from the common-law employee criteria addressed in *Vizcaino*.

### Retirement Plan

Defendants contend Plaintiffs are excluded from receiving retirement benefits because the Retirement Plan was amended, effective December 21, 2000, to specifically provide:

> Any individual who is found to be a common law employee of an Employer but for whom an Employer does not report wages on Form W-2, or any successor form, on which employee wages are to be reported because such individual is treated [as] an independent contractor by the Employer, shall not be considered an Employee.

---

[5]The Seventh Circuit recently reemphasized this point in *Estate of Anthony J. Suskovich v. Anthem Health Plans of Virginia, Inc., et al.*, Case No. 08-1070, 2009 WL 140494, at *11 (7th Cir. Jan. 22, 2009) ("Eligibility under ERISA is not automatic for common law employees, however. A plaintiff must also demonstrate that he was eligible under the terms of the employer's own benefit plans.")

(DSOF, Ingram Dec., Ex. B(2).) Defendants argue this amendment excluded Plaintiffs from participating in the Retirement Plan from "the earliest possible date that [Plaintiffs] could have participated." Furthermore, Defendants argue, Plaintiffs' alleged "employer" here, PGI, did not become a participating employer in the Retirement Plan until January 1, 2001; and by that time, the amendment set out above was in effect and excluded persons who do not receive W-2s. To support this argument, Defendants point to an amendment to the Retirement Plan, stating: "On January 1, 2001, [PGI and others] . . . shall adopt the Plan and become Employers." (Ingram Dec., Ex. B(2)).[6]

Therefore, Defendants have shown that Plaintiffs have no claim for benefits under the Retirement Plan because PGI, Plaintiffs' alleged "employer" here, did not become a participating employer in the Retirement Plan until January 1, 2001, by which time the Retirement Plan had been amended to exclude persons (like Plaintiffs) who did not receive W-2s and were treated as independent contractors.

Plaintiffs do not dispute that their alleged employer was PGI and do not dispute that PGI did not become a participating employer until 2001. Instead, Plaintiffs argue that the 2000 amendment set out above was ineffective as to them because they did not receive notice of it. However, Section 204(h) of ERISA provides that only "plan participants" are entitled to notice. Specifically, Section 204(h) requires "each participant in the plan" whose rate of accrual may be adversely affected by an amendment to a plan to be given notice thereof. 29 U.S.C. § 1054(h)(1), (8) (2005). Because there is no dispute that PGI was not a participating employer at the time of the

_____

[6]Defendants also argue Plaintiffs are not entitle to participate in the Retirement Plan because they do not meet the Plan's requirements for initial eligibility and vesting.

amendment, Plaintiffs were not "plan participants" and were not required to be notified. Thus, Plaintiffs have not shown either that they were entitled to notice of the amendment under Section 204(h) of ERISA or that they were eligible for benefits under the terms of the Retirement Plan. Accordingly, Defendants' motion for summary judgment on Count I on Plaintiffs' claim for ERISA benefits under the Retirement Plan is granted.

## Medical Plan

Defendants contend Plaintiffs did not satisfy the requirements for receiving benefits under the Medical Plan because the "Medical Plan Summary Plan Description" required that an employee be normally scheduled to work at least thirty hours per week to participate, and Plaintiffs did not satisfy this requirement. The parties do not dispute that the "Medical Summary Plan Description and Highlights Booklet provide that 'You're eligible for the Medical Plan if you're a regular full-time employee who is normally scheduled to work at least 30 hours a week.'" (DSOF, ¶ 62.)

However, Plaintiffs dispute that the Medical Plan contains this 30-hour-work week requirement. Plaintiffs argue that the requirement does not appear in the Medical Plan document itself (rather, the Plan document defines an employee simply as "a person who is directly employed in the regular business of, and is compensated for services, by a Participating Employer."). Plaintiffs argue that "the plan's definition of 'employee' controls," and no 30-hour-work-week requirement for participating in the Medical Plan exists. They cite *Swaback v. Am. Info. Tech. Corp.*, 103 F.3d 535, 539-42 (7ᵗʰ Cir. 1996), and *Schwartz v. Prudential Ins. Co. of Am.*, 450 F.3d 697 (7ᵗʰ Cir. 2006), for the proposition that when a plan document is silent as to eligibility restrictions which appear

11

in a summary plan description, the plan controls.[7]

Material issues of fact exist as to whether Plaintiffs were eligible to participate in the Medical Plan. The Seventh Circuit stated in *Health Cost Controls of Illinois, Inc. v. Washington,* 187 F.3d 703, 711 (7th Cir.1999): "When . . . the plan and the summary plan description conflict, the former governs." There is no dispute that the summary plan description contains a 30-hour-work-week requirement, which is not expressly stated in the Medical Plan itself. Defendants state that the summary plan document does not conflict with the Plan but merely fills "an interpretative gap" in it. However, Defendants do not cite to any specific provision(s) in the Plan which support this position; they simply refer generally to the over-fifty-page Medical Plan document. This is insufficient; in deciding a motion for summary judgment, all reasonable inferences are to be drawn in Plaintiffs' favor. Therefore, a triable issue exists as to whether the summary plan description conflicts with the Plan document and whether the Plan includes a 30-hour-work-week requirement.

Defendants also argue that Oplchenski's claim for ERISA benefits is time-barred by New York's six-year statute of limitations. Oplchenski does not dispute that New York's six-year statute applies. The parties dispute when Oplchenski's claim for benefits accrued. Defendants argue a plaintiff's claim accrues when she learns that the defendant considers her ineligible for benefits, even if she later makes a formal

---

[7]In addition, Oplchenski disputes that she did not regularly work a 30-hour work week, arguing that she "provided the corporate executives with evidence that she did routinely work more than thirty hours per week" and that when she filed an unemployment claim, "the Illinois Department of Employment Security determined that she usually worked 40 to 48 hours per week." However, Oplchenski cites no record evidence to support those assertions.

administrative application for benefits. Defendants rely on district court decisions from other jurisdictions, including *Brennan v. Metropolitan Life Ins. Co.*, 275 F. Supp.2d 406, 409 (S.D.N.Y. 2003). Defendants contend Oplchenski first learned that Defendants considered her ineligible for benefits in April 1999, when she first submitted an invoice to PGI, containing language stating that she was an independent contractor. (Her initial complaint was filed on October 21, 2005, more than six years thereafter.)

The Seventh Circuit has held that, although there need not be a formal denial of benefits for a cause of action to accrue, "a cause of action accrues upon a clear and unequivocal repudiation of rights under the [ERISA] plan which has been made known to the beneficiary." *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 66 (7th Cir. 1996). It cannot be determined, based on the parties' summary judgment submissions, that Oplchenski had knowledge of a "clear and unequivocal repudiation of rights" by Defendants under the Plans when she submitted her first invoice in April 1999. Accordingly, summary judgment is not appropriate on the ground that Oplchenski's ERISA claim is time-barred.

Finally, Defendants argue Plaintiffs' ERISA claims are foreclosed by their agreements to be independent contractors. Defendants rely on evidence that Plaintiffs signed and submitted invoices to PGI for payment, containing preprinted language stating that Plaintiffs were independent contractors. Defendants contend these invoices constitute agreements that Plaintiffs were independent contractors, not employees. Plaintiffs dispute that they considered the preprinted language on the invoices to constitute "agency agreements" or contracts by which they agreed that they would be

13

independent contractors instead of employees entitled to benefits. Genuine issues of material fact exist as to whether the invoices constitute agreements to be treated as independent contractors ineligible for employee benefits.

Plaintiffs have demonstrated that material issues exist as to whether they were entitled to benefits under the Medical Plan. Defendants' motion for summary judgment on Count I is denied as to Plaintiffs' claim for benefits under the Medical Plan.

*Counts V and VII - Breach of Fiduciary Duty*

Defendants next move for summary judgment on Plaintiffs' "claims for breach of fiduciary duty," Counts V and VII. Count VII alleges that various "Fiduciary Defendants" (*i.e.*, Schieffelin, Guerlain, Ingram, McDonald, Baxter and Love-Rooney) breached their fiduciary duties to Plaintiffs by: (1) violating the "exclusive benefit rule" and operating the Plans for their own benefit and not for the exclusive purpose of providing benefits to Plaintiffs; (2) failing to follow ERISA requirements; (3) failing to follow the Plans; (4) failing to comply with the notice requirements; (5) failing to follow the Plans' written claim review procedures and misrepresenting those procedures; (6) failing to provide a copy of the entire administrative record; (7) failing to implement procedures to ensure claims are handled properly; and (8) concealing documents and information from the Plaintiffs. (FAC, ¶ 79.) Count V alleges that "systematic failure and refusal" of Defendants Guerlain, Schieffelin, PG Inc., PG LLC, CDP, LVMHPC Inc., Ingram, McDonald, Baxter and Love-Rooney to follow ERISA and the Plans constitutes a breach of fiduciary duty under Sections 502, 404 and 409 of ERISA, 29 U.S.C. §§ 1132, 1104 and 1109. (FAC, ¶ 73.)

14

Defendants contend they are entitled to summary judgment on Plaintiffs' fiduciary duty claims for several reasons. First, Defendants claim Plaintiffs are not entitled to benefits under the Plans. As discussed above, Plaintiffs are not entitled to benefits under the Retirement Plan, and summary judgment is granted on Defendants' motion on that issue. As to the Medical Plan, Defendants argue that there is no evidence of "plan losses" or "profits" to fiduciaries through misuse of plan assets as required to support a claim for breach of fiduciary duty under 1132(a)(2). In support of this contention, Defendants cite *Hart v. Group Short Term Disability Plan for Employees of CAP Gemini Ernst & Young*, 338 F.Supp.2d 1200 (D. Co. 2004) (*Hart*). *Hart* held that loss to an employee benefit plan is a required element of any claim under ERISA's breach of fiduciary duty section. *Hart*, 338 F.Supp.2d at 1202 ("[W]hile Plaintiff may have standing to assert a claim on and behalf of the Plan under 29 U.S.C. § 1132(a)(2) for relief under § 1109(a), he states no viable claim for relief under those provisions unless he alleges harm to the Plan or ill-gotten profits to the fiduciary as a result of the fiduciary's alleged breach of its duties. This Plaintiff has failed to do.").

Plaintiffs rely on *Herman v. Time Warner, Inc.*, 56 F.Supp.2d 411 (S.D.N.Y. 1999) (*Herman*), for the proposition that a plan fiduciary may breach fiduciary duties under ERISA merely "by failing to identify workers, who were indeed eligible to participate in the plans but who were misclassified by the hiring managers as temporary employees and independent contractors." According to Plaintiffs, *Herman* establishes that plans "necessarily suffer losses" when employees should be included in benefit plans but are not.

15

*Herman* does not support Plaintiffs' position. In *Herman,* the court denied the defendants' motion to dismiss because the government alleged that as a consequence of defendants' alleged misclassification of employees, defendants "failed to comply with ERISA's mandatory disclosure requirements (as defendants could not provide information to unidentified employees) and with plan documents (as the misclassified employees were excluded from participation)." *Herman,* 56 F.Supp.2d at 417. The court stated: "The government has alleged injury to the plans." *Id.,* at 418.

In contrast here (and on summary judgment), Plaintiffs have not made similar allegations. Plaintiffs fail, in their opposition brief, to explain the specific statutory (or any other) basis or bases for their asserted breach of fiduciary duty claims alleged in Counts V and VII; nor do they produce evidence supporting the factual basis or bases for the claims or evidence showing losses to the Plans. Plaintiffs' mere citation to *Herman* is insufficient to withstand summary judgment. Plaintiffs have failed to meet their burden of coming forward with evidence sufficient to support a viable claim for breach of fiduciary duty.[8] Therefore, Defendants' motion for summary judgment as to Counts V and VII is granted.

### Count VI - Failure to Comply with Claims Procedures

Count VI of the FAC alleges Plaintiffs are entitled to the benefits they seek from the Plans based on the alleged failure of the plan fiduciaries to respond to Oplchenski's benefit claims in the manner required by Section 503 of ERISA, 29 U.S.C. § 1133, and

---

[8]Because Plaintiffs' claims fail on this basis, it is not necessary to address Defendants' third argument that Plaintiffs' claims for breach of fiduciary duty are barred by the three-year statute of limitations.

the Claims Regulations. (FAC, ¶ 76.) Defendants contend this claim fails as a matter of law because "even if the plan fiduciaries failed to respond to the claim in the appropriate time and manner, that would not provide a basis for recovery of benefits from the plans." Defendants cite *Engler v. Cendant Corp.*, 434 F. Supp.2d 119, 129 (E.D.N.Y. 2006) and other cases for the proposition that no substantive award of benefits can be made for a violation of ERISA's procedural requirements.

Defendants' cases do not support the proposition that procedural errors can never support a substantive award of benefits; rather, they hold that a substantive award of benefits cannot be made where there has been *de novo* review of the benefits determination, and it has been determined that the ultimate benefit decision is correct. *See Samaritan Health Ctr v. Simplicity Health Care Plan*, 516 F. Supp.2d 939, 959 (E.D. Wis. 2007). However, here, it has not been conclusively determined that Defendants' substantive benefit determinations under the Medical Plan were correct. Therefore, Defendants' motion for summary judgment as to Count VI is denied with respect to the Medical Plan. However, summary judgment is granted on Count VI with respect to the Retirement Plan because, as discussed above, Plaintiffs are not entitled to benefits under the terms of the Retirement Plan.

### Count VIII - Failure to Provide Copy of Administrative Record

Count VIII alleges that the plan administrators violated Section 502(c) of ERISA, 29 U.S.C. § 1132(c), by failing to provide Oplchenski with a copy of the administrative record. Defendants contend they are entitled to summary judgment on this count because Oplchenski is neither a "plan participant" nor a "beneficiary" and thus cannot maintain a

17

claim under Section 1132(c). However, again, as discussed above, material issues of fact exist regarding whether Plaintiffs qualified for benefits at least with respect to the Medical Plan. Defendants' motion for summary judgment on Count VIII is therefore denied with respect to the Medical Plan. The motion on Count VIII is granted, however, to the extent it pertains to the Retirement Plan.

## Count II - IWPCA Claim

Count II alleges that "Defendants have failed to pay Plaintiffs the amount which they are owed under the Illinois Wage Payment and Collection Act" ("IWPCA").

Defendants seek summary judgment on this count, citing cases in this district finding that the IWPCA confers no rights to compensation "in the absence of a contract." *Galietta v. Comdisco Holding Co., Inc.*, No. 02 C 7030, 2003 WL 685645, *3 (N.D.Ill. Feb. 27, 2003) ("Unless appellants can establish that Comdisco is under a contractual obligation to pay the bonuses, the IWPCA has no application to this case.") (*Galietta*). *See also Byker v. Sequent Computer Sys., Inc.*, Case No. 96 C 2297, 1997 WL 639045, *7 (N.D.Ill. Oct. 1, 1997) ("the act does not confer any rights to recovery of final compensation in the absence of a contractual right.").

Defendants contend, and point to evidence indicating, that Plaintiffs received all the compensation they were promised because Plaintiffs were "paid in full for all amounts for which they submitted invoices to Defendants."

Although Plaintiffs generally deny Defendants' assertions, made in Defendants' Statement of Facts, that Plaintiffs received all the compensation they were promised (*see* Pltf. Res. to DSOF, ¶¶ 26-28), Plaintiffs make no effort in their opposition brief to

18

articulate – much less point to any record evidence demonstrating – what specific compensation Defendants made a contractual commitment to them to pay that Defendants have failed to pay. Instead, Plaintiffs merely refer to "Section I" of their brief, which discusses *Vizcaino*. Thus, Plaintiffs' position appears to be that they are entitled to some compensation because they are common-law employees.

*Vizcaino* does not establish that Defendants are liable to Plaintiffs under the IWPCA. "The IWPCA . . . merely requires 'that the employer honor his contract'; it does not confer rights in the absence of a contract." *Galietta*, 2003 WL 685645, *3.

Plaintiffs have failed to point to evidence showing they had contractual agreements with Defendants for compensation for which they were not paid. Defendants are entitled to summary judgment as to Plaintiffs' claim under the IWPCA.

*Count III - Overtime Pay Under the IMWL*

Count III alleges that Plaintiffs "worked overtime for which they were not compensated" and therefore are "employees" entitled to relief under the IMWL. (FAC, ¶ 66.)

With respect to overtime compensation, the IMWL provides:

[N]o employer shall employ any of his employees for a workweek of more than 40 hours unless such employee receives compensation for his employment in excess of the hours above at a rate not less than 1 ½ times the regular rate at which he is employed.

820 ILCS 105/4a(1).

The IMWL provides that an employee seeking to recover amounts allegedly underpaid must bring a civil action "within 3 years from the date of the underpayment." 820 ILCS 105/12(a).

19

Defendants contend Plaintiffs' claim is untimely. They argue that since Plaintiffs first asserted their claim for overtime compensation under the IMWL in their Third Amended Complaint, filed on May 16, 2005, in order to make a timely claim for overtime under the IMWL, Plaintiffs must have worked in excess of forty hours in a work week after May 19, 2003. Defendants contend the uncontested evidence in the record is that Plaintiffs did not. Defendants cite to evidence in the record indicating that Plaintiffs did not work in excess of forty hours in any given work week.

Plaintiffs dispute that their claim is untimely. However, even if the limitations period in the IMWL is measured back from October 2005 (when Plaintiffs' intial complaint was filed), Plaintiffs have failed to come forward with sufficient evidence to demonstrate that they are entitled to overtime compensation. The only evidence Plaintiffs produced with respect to their claim for overtime pay are their own affidavits, submitted as Exs. H and I. These affidavits do not demonstrate that Plaintiffs worked more than forty hours in a work week, qualifying them for overtime compensation under the IMWL.

Plaintiffs have failed to meet their burden of presenting evidence on summary judgment sufficient to create a triable claim for overtime compensation under the IMWL; Defendants' motion for summary judgment on Count III is granted.

### Counts IV and IX - Breach of Express and Implied Contract

Finally, Defendants move for summary judgment on Plaintiffs' common-law claims for breach of express and implied contract alleged in Counts IV and IX.

20

Defendants contend both of these claims fail because "the undisputed facts show that Plaintiffs entered into express contracts to be paid a flat hourly rate with no promise or expectation of other employment benefits."

Plaintiffs make no effort to refute Defendants' argument or produce contrary evidence. The sum total of Plaintiffs' opposition is: "The argument that Plaintiffs had no agreement with Defendants is addressed in Section I above." Plaintiffs' response is insufficient to show that genuine issues of material fact exist with respect to their common-law claims of breach of express and implied contract. Defendants' motion for summary judgment as to Counts IV and IX is granted.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is granted on Count I with respect to Plaintiffs' claim for benefits under the Retirement Plan; Count II; Count III; Count IV; Count V; Count VI with respect to the Retirement Plan; Count VII; Count VIII with respect to the Retirement Plan; and Count IX. Defendants' motion is denied on Count I with respect to Plaintiffs' claim for benefits under the Medical Plan; Count VI with respect to the Medical Plan; and Count VIII with respect to the Medical Plan.

Date: February 19, 2009

JOHN W. DARRAH
United States District Court Judge